758 S.E.2d 916

CENTENNIAL CASUALTY CO., INC., Respondent,

v.

WESTERN SURETY COMPANY, d/b/a CNA Surety, Appellant.

Western Surety Company, d/b/a CNA Surety,
Defendant/Third–Party Plaintiff,

v.

Charleston Auto Auction, A3 Auto Center, LLC,
and Wylie Mickle, Third–Party Defendants.

Appellate Case No. 2013–001381.

No. 5231.

Court of Appeals of South Carolina.

Heard May 7, 2014.

Decided May 21, 2014.

Rehearing Denied June 25, 2014.

S. Markey Stubbs, of Baker Ravenel & Bender, LLP, of Columbia, for Appellant.

Ian S. Ford, of Ford Wallace Thomson LLC, of Charleston, for Respondent.

LOCKEMY, J.

Western Surety Co., d/b/a CNA Surety, argues the circuit court erred in (1) finding Charleston Auto Auction (CAA) and its insurance carrier, Centennial Casualty Co. (Centennial), were "legal representatives" pursuant to section 56–15–320(B) of the South Carolina Code; (2) finding section 56–15–320(B) applies when fraud is committed by either the seller or the purchaser of a motor vehicle; and (3) failing to address whether CAA was also the legal representative for the purchasing dealer, and if so, was a participant in the fraud. We reverse.

## FACTS/PROCEDURAL BACKGROUND

CAA is a wholesale auctioneer that facilitates the sale and purchase of automobiles among dealers. According to its general manager, CAA (1) acts as the agent and legal representative for dealerships in the transactions; (2) collects and conveys the funds for the automobiles; and (3) conveys, but does not assume, the title to the automobiles between the parties. Section 56–15–320(B) of the South Carolina Code requires motor vehicle wholesalers and dealers to obtain a bond in order to indemnify

for loss or damage suffered by an owner of a motor vehicle, *or his legal representative,* by reason of fraud practiced or fraudulent representation made in connection with the sale or transfer of a motor vehicle by a licensed dealer or wholesaler or the dealer's or wholesaler's agent acting for the dealer or wholesaler or within the scope of employment of the agent or loss or damage suffered by reason of the violation by the dealer or wholesaler or his agent of this chapter.

S.C.Code Ann. § 56–15–320(B) (Supp.2013) (emphasis added). Before CAA will facilitate sales of automobiles, dealers must enter into an agreement with CAA stating CAA is their legal representative in the transaction.

In March 2008, A3 Auto Center (A3), an automobile dealer, purchased three vehicles using CAA. Each vehicle's bill of sale stated: "Seller and Buyer each appoint [CAA] as their agent and legal representative for the purpose of processing this transaction through [CAA]. . . . " Pursuant to the requirements of section 56–15–320(B), A3 obtained a surety bond from CNA Surety.

A3 paid for the vehicles with three checks, all of which were returned for insufficient funds. CAA sought reimbursement from Centennial, its insurance carrier, for A3's bad checks. Centennial paid CAA's claim in the amount of $35,305. Centennial subsequently demanded payment from CNA Surety under the bond. CNA Surety refused to pay, arguing neither Centennial nor CAA were the owner or legal representative who suffered a loss or damage pursuant to section 56–15–320(B).

Centennial filed a summons and complaint against CNA Surety on October 19, 2009. In its complaint, Centennial alleged: (1) it was subrogated to the rights of CAA; (2) CAA was an owner or legal representative who suffered a loss or damage; and (3) Centennial was entitled to payment under the terms of the bond. In its answer, CNA Surety admitted it was the surety for the bond at issue, but denied that Centennial was the proper party to seek indemnification, or that the loss was covered under section 56–15–320(B). CNA Surety filed a third-party complaint against CAA alleging CAA was the real party in interest, but denying CAA was entitled to

seek reimbursement under the bond pursuant to section 56–15–320(B).

On July 8, 2010, Centennial and CAA filed a motion for summary judgment. CNA Surety filed a cross-motion for summary judgment on September 22, 2010. The circuit court denied both motions. Thereafter, CNA Surety and Centennial agreed to a joint stipulation of facts. Both parties stipulated that pursuant to the statutory cap in section 56–15–320(B), the maximum amount in controversy was $30,000. The parties submitted the stipulation, legal briefs, and proposed orders to the circuit court in lieu of oral arguments.

The circuit court ruled in Centennial's favor, holding CAA was the legal representative of the sellers, and thus, CAA and Centennial, as CAA's subrogee, were entitled to reimbursement under section 56–15–320(B). The circuit court subsequently denied CNA Surety's motion to reconsider. This appeal followed.

## STANDARD OF REVIEW

"In an action at law, on appeal of a case tried without a jury, the findings of fact of the judge will not be disturbed upon appeal unless found to be without evidence which reasonably supports the judge's findings." *Townes Associates, Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).

## LAW/ANALYSIS

CNA Surety argues the circuit court erred in finding CAA and Centennial, as CAA's subrogee, were legal representatives pursuant to section 56–15–320(B) of the South Carolina Code. We agree.

Pursuant to section 56–15–320(B):

Each applicant for licensure as a dealer or wholesaler shall furnish a surety bond in the penal amount of thirty thousand dollars.... The bond must be conditioned upon the applicant or licensee complying with the statutes applicable to the license and as indemnification for loss or damage suffered by an owner of a motor vehicle, *or his legal representative,* by reason of fraud practiced or fraudulent representation made in connection with the sale or transfer

of a motor vehicle by a licensed dealer or wholesaler or the dealer's or wholesaler's agent acting for the dealer or wholesaler or within the scope of employment of the agent or loss or damage suffered by reason of the violation by the dealer or wholesaler or his agent of this chapter.

S.C.Code Ann. § 56–15–320(B) (Supp.2013) (emphasis added). "An owner or his legal representative who suffers the loss or damage has a right of action against the dealer or wholesaler and against the dealer's or wholesaler's surety upon the bond and may recover damages as provided in this chapter." *Id.* Pursuant to *Mid–State Auto Auction of Lexington, Inc. v. Altman*, 324 S.C. 65, 69, 476 S.E.2d 690, 692 (1996), "when [section] 56–15–320 is read in its entirety, it is clear the legislature intended to provide only the owner of a motor vehicle, or the owner's legal representative, with a cause of action against the surety on a bond issued pursuant to that statute."

Here, three dealers (the Sellers) sold vehicles to A3 using CAA. The Sellers and A3 signed purchase agreements which stated:

Seller and Buyer each appoint [CAA] as their agent and *legal representative for the purpose of processing this transaction through Auction Company, including transfer of title.* However, they agree [CAA] is merely performing an auction service and [CAA] disclaims all express and implied warranties, including merchantability and fitness, except for the warranty of title described below.

Seller and Buyer indemnify and hold [CAA] harmless from any liability, loss, costs, damages or expenses, including attorney's fees which arise directly or indirectly from this transaction, including, but not limited to, all matters relating to odometer mileage, odometer mileage disclosure, and vehicle history even if Seller and Buyer are not at fault.

(emphasis added).

CNA Surety argues CAA was merely an agent or legal representative for facilitating the transactions and did not stand in the shoes of the Sellers. It contends that if the legislature intended to include auction houses in section 56–15–320(B), it would have done so. Centennial argues each of the purchase agreements explicitly made CAA the Sellers'

legal representative. Centennial contends CNA Surety incorrectly argues the term "legal representative" has a different, narrow meaning that excludes some legal representatives and includes other legal representatives, depending on the circumstances.

We find CAA and Centennial were not legal representatives of the Sellers. According to the purchase agreements signed by the parties, CAA was tasked with "processing [the] transaction[s]" through CAA. Therefore, unlike an executor or conservator, CAA acted only as a processor and did not stand in the shoes of the Sellers.

Section 56–15–520 of the South Carolina Code specifically addresses vehicle auction houses:

> When a transfer of title is made as a result of a transaction at a wholesale motor vehicle auction, the reassignment of title or bill of sale must note the name and address of the wholesale motor vehicle auction. However, *the wholesale motor vehicle auction is not deemed to be the owner, seller, transferor, or assignor of title of a motor vehicle* by reason of its name appearing on a reassignment of title or bill of sale or by reason of its payment of a guarantee of payment to a seller, receipt of payment from a purchaser, or the reservation of a lien or security interest for the purpose of securing payment from a purchaser.

S.C.Code Ann. § 56–15–520 (2006) (emphasis added). Section 56–15–520 clearly states an auto auction's actions do not convert it into an owner, seller, transferor, or assignor of title of vehicles. Here, the Sellers maintained their status as owners and CAA acted only as their agent in processing the vehicles through the auction. We find CAA's inclusion of the term "legal representative" in the purchase agreements did not give CAA the same rights as the Sellers.

Based upon our decision to reverse the circuit court as to this issue, we need not address the remaining issues on appeal. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address any remaining issues if the disposition of a prior issue is dispositive).

## CONCLUSION

We reverse the circuit court's finding that CAA and Centennial were legal representatives of the Sellers.

**REVERSED.**

WILLIAMS and KONDUROS, JJ., concur.